## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| TAMMY MOSLEY-LOVINGS, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>AT&T CORP.; AT&T INC.; SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; AT&T SERVICES, INC.; and DIRECTV LLC, )<br><br>Defendants. ) | CIVIL ACTION NO. 3:18-cv-1145 |

## AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiff, Tammy Mosley-Lovings, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), for her Amended Collective Action Complaint against AT&T Corp., AT&T, Inc., Southwestern Bell Telephone L.P., AT&T Services, Inc., and DirecTV LLC (collectively, "Defendants"), states as follows:

### Nature of Plaintiffs' Claims

1. This is a collective action under the Fair Labor Standards Act ("FLSA") involving call center employees who were not paid by Defendants for all time worked. Defendants failed to pay for all time worked by Plaintiffs and the putative class, depriving these employees of their earned straight time and overtime wages. As of the date this Complaint was filed,

approximately 130 employees have already consented to participate in this action; copies of

their consent forms have been previously filed in this matter; see Doc.# 1-2, 1-3.

**Jurisdiction and Venue**

2.   This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims

brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

3.   This Court has personal jurisdiction over the Defendants for reasons that include:

(a)  Defendants conduct business and enter into contracts within the State of Texas and in

this District and with persons and businesses located within the State of Texas and in this

District;

(b) As more specifically pled below, Defendants purposefully originated, implemented

and controlled the wage and hour policies and practices that gave rise to the FLSA claims

asserted herein, and Defendants purposefully directed their improper wage and hour

policies and practices at residents of the State of Texas and their employees who reside in

this District, among other people;

(c) Defendants have purposefully directed the marketing of their telephone services at

residents and businesses located in the State of Texas; and

(d) Defendants purposefully solicit Texas residents to enter into service agreements.

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants

have offices, conduct business, and can be found in the Northern District of Texas, one or

more of Defendants are headquartered in Dallas, Texas, and the causes of action set forth

herein have arisen and occurred in part in the Northern District of Texas.

**Parties**

    *i.*     ***Plaintiffs***

5.  Plaintiff Tammy Mosley-Lovings resides in this judicial district, and has worked as an employee for Defendants for approximately 18 years.  Mosley has been compensated as an hourly paid non-exempt employee of Defendants in this District during the applicable FLSA statute of limitations period.  A copy of Plaintiff Mosley's consent form was previously filed, Doc. #1-2.

6.  Additional hourly paid non-exempt employees of Defendants have opted in to this matter and their consent forms were attached to Plaintiffs' initial Complaint, Doc. #1-3.  Plaintiff, these additional opt-ins, and other employees similarly situated are referred to as "Plaintiffs".

    *ii.*     ***AT&T Corp.***

7.  AT&T Corp. is a New York Corporation doing business as a telecommunications holding company.  It shares control over Plaintiffs and members of the putative classes alleged in this action.

8.  AT&T Corp. is a direct subsidiary of AT&T, Inc., according to its representations to the Court in *LaMarr v. Illinois Bell Telephone Company,* 15 C 8660, N.D. Ill. 2014.

9.  AT&T Corp. has acted and continues to act directly or indirectly in the interest of the employers of Plaintiffs and the putative classes alleged herein, in relation to Plaintiffs and the putative classes alleged herein, by exercising control over the working conditions of those employees, including as set forth herein.

10.  AT&T Corp. created a Corporate Code of Conduct that controlled and mandated operations and working conditions at all its subsidiaries, including the co-defendants herein,

mandating, amongst other things, that all supervisors and other management employees of call center representatives, nationwide, report for payroll processing all hours worked by call center representatives.

11.  AT&T Corp. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

12.  AT&T Corp. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs.  Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

13.  AT&T Corp. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance, job performance, discipline and termination at each of the call centers at issue in this lawsuit.

14.  AT&T Corp. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time stamps for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the stop time of their scheduled shifts.

15.  At certain call center centers across the country, the Defendants have utilized this Logout data at various times to calculate overtime pay for call center representatives without independent self-reporting or rounding.

16.  AT&T Corp. has created, maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to Login and Logout of shared software applications and operating systems by utilizing their local computers as remote terminals to that platform.   Such Login and Logout data is recorded and stored and will demonstrate the hours of work performed but not paid by call center associates, including Plaintiffs.

17.  A payroll system is used for all domestic employees of AT&T Corp., including all of the opt-in employees and the putative classes alleged in this matter.

18.  Part of AT&T Corp.'s processing of domestic call center employee's payroll is a "rounding" function, that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was self-reported, recorded by the employer or not.

19.  The rounding performed by this function in the central payroll processing platform results in domestic call center employees - including the opt-in Plaintiffs and putative classes alleged herein - having more minutes of time worked rounded away than given, to their detriment.

20.  AT&T Corp. violated the Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative

System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

21.   The work performed by Plaintiffs and the putative classes alleged herein has benefitted Defendant AT&T Corp.

22.   At all relevant times, Defendant AT&T Corp. was the "employer" or a "joint employer" of Plaintiffs and members of the putative classes alleged herein, as the term "Employer" is defined under the FLSA.

23.   AT&T Corp. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative classes alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

*iii.*    *AT&T Inc.*

24. AT&T Inc. is a New York Corporation doing business as a telecommunications holding company.   It is the world's largest telecommunications company.   It shares control over Plaintiffs and members of the putative classes alleged in this action.

25. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

26. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs.  Such terms include, *inter alia,* job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

27. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance, job performance, discipline and termination at each of the call centers at issue in this lawsuit.

28. AT&T Inc. centrally controls payroll processing for all of the employees that are the subject of this lawsuit:  AT&T, Inc. developed a computer platform called "TotalView", which is the interface that ultimately feeds the payroll system for its employees (called "eLink") with employee level information, time codes, durations, and sometimes dollar amounts.

29. The payroll system is used for all domestic employees of AT&T Inc., including all of the opt-in employees and the putative classes alleged in this matter.

30. Part of AT&T Inc.'s processing of domestic call center employee's payroll is a "rounding" function, that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was self-reported, recorded by the employer or not.

31. The rounding performed by this function in the central payroll processing platform results in domestic call center employees - including the opt-in Plaintiffs and putative classes

alleged herein - having more minutes of time worked rounded away than given, to their detriment.

32.   All call center employees, including Plaintiffs, have an AT&T Inc. user identification login, in order to access AT&T, Inc. servers for various purposes.

33.   The AT&T Inc. user identification is issued by AT&T, Inc. to the employee.

34.   The AT&T Inc. user ID is mapped to associate the identification to the AT&T user ID of the employee.

35.   All call center employees who are the subject of this lawsuit also have an ASON user ID, also issued by AT&T Inc.

36.   These call center employees also have a call queue log in ID, also issued by AT&T Inc.

37.   AT&T Corp. violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

38.   The work performed by Plaintiffsand the putative classes alleged herein has benefitted Defendant AT&T Corp.

39.   AT&T Inc. has had the power to hire and fire employees, including Plaintiffs and the putative classes alleged herein, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work performed by those employees, and it maintained employment records for those

employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

40.    At all relevant times, the AT&T Inc. was the "employer" or a "joint employer" of Plaintiffs and members of the putative classes alleged herein, as the term "Employer" is defined under the FLSA.

### iv.    *Southwestern Bell Telephone*

41.    Southwestern Bell Telephone, L.P. is a Texas limited partnership doing business as a telecommunications firm in the State of Texas and in the Southwestern United States, with over 1,000 employees.   It is a wholly-owned subsidiary of AT&T, Inc., and it also does business under the name "Southwestern Bell", AT&T Communications of Texas, LLC, and "AT&T Southwest." It is headquartered in Dallas, Texas.

42.   At all times between three years prior to the filing of this Complaint through the present, Southwestern Bell Telephone, L.P. was engaged in the business of, among other things, operating call centers staffed by the opt-in plaintiffs and putative classes alleged herein, in the Southwestern United States, including Dallas, Texas; Norman, Oklahoma; San Antonio, Texas; and other call centers in Defendants' Southwest region, including in Missouri, Kansas, Oklahoma and Arkansas.

43.   Southwestern Bell Telephone, L.P. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

44.   Southwestern Bell Telephone, L.P. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such

employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

45.  Southwestern Bell Telephone, L.P. violated the Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

46.  The work performed by Plaintiffs and the putative classes alleged herein has benefitted Defendant Southwestern Bell Telephone, L.P.

47.  Southwestern Bell Telephone, L.P. employs, manages, and/or controls the coaches, supervisors, and call center managers, who are responsible for the day-to-day oversight, evaluation and review of all call center representative's performance for the call centers at issue in this case.   This includes, *inter alia,* reviewing job performance, administering discipline, and/or terminating the employment of call center representatives.

48.  Southwestern Bell Telephone, L.P. has had the power to hire and fire employees, including Plaintiffs and the putative classes alleged herein, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work performed by those employees, and it maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

49. At all relevant times, Southwestern Bell Telephone, L.P. exercised control over and was the "employer" or a "joint employer" of Plaintiffs and members of the putative classes alleged herein, as the term "Employer" is defined under the FLSA.

### v.    AT&T Services, Inc.

50. AT&T Services, Inc. is a Delaware corporation, formerly known as SBC Services, Inc.

51. AT&T Services, Inc. provides transaction processing services, billing, payroll, accounts payable, customer remittance, fixed assets record keeping, GL processing, personnel management and specialized services to the parent companies and to related affiliates, including the other Defendants, in this judicial district.

52. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

53. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs.  Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

54. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance, job performance, discipline and termination at each of the call centers at issue in this lawsuit.

55. AT&T Services, Inc. has issued payroll checks to Plaintiffs and the members of the putative classes alleged herein.

56. AT&T Services, Inc. has had the power to hire and fire employees, including Plaintiffs and the putative classes alleged herein, it has supervised and controlled employee work schedules or conditions of payments for those employees, it has calculated and determined the rate and method of payment for work performed by those employees, and it has maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

57. AT&T Services, Inc. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

58. AT&T Services, Inc. is reflected as the employer on Plaintiff Mosley-Lovings' statement of earnings, taxes and allotments (e.g., pay stub), and, upon information and belief, is reflected as the employer on each of the opt-in plaintiffs' pay stubs.

59. At all relevant times, AT&T Services, Inc. exercised control over and was the "employer" or a "joint employer" of Plaintiffs and members of the putative classes alleged herein, as the term "Employer" is defined under the FLSA.

60. AT&T Services, Inc. violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and

Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

61.  The work performed by Plaintiffs and the putative classes alleged herein has benefitted Defendant AT&T Services, Inc.

> ### vi.     DirectTV, LLC

62.  The DirecTV Group, Inc., also known as DIRECTV, LLC  or DirecTV ("DirecTV") is a Delaware corporation providing direct broadcast service and conducts business activities in North America including subscribers and revenue, leased set top boxes, programming, IT & Engineering.

63.  DirecTV is a subsidiary of Defendant AT&T Inc.

64.  DirecTV employs supervisors and managers of Plaintiffs, who were aware of time worked by Plaintiffs for which they were not paid, and were aware of Defendants' corporate code of conduct, and violated the Code by not reporting the unpaid time worked by Plaintiffs.

65.  DirecTV promulgated mandatory rules, policies, and practices regarding the manner and method by which Plaintiffs were to sell or attempt to sell and manage DirecTV's services.

66.  DirecTV is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

67.  DirecTV possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs.  Such terms include, *inter alia*,

job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

68.  DirecTV employs, manages, and/or controls the coaches, supervisors, and call center managers, who are responsible for the day-to-day oversight, evaluation and review of all call center representative's performance for the call centers at issue in this case.  This includes, *inter alia,* reviewing job performance, administering discipline, and/or terminating the employment of call center representatives.

69.  DirecTV has had the power to hire and fire employees, including Plaintiffs and the putative classes alleged herein, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work performed by those employees, and it maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

70.  DirecTV violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

71.  The work performed by Plaintiffs and the putative classes alleged herein has benefitted Defendant DirecTV.

72.    At all relevant times, DirectTV exercised control over and was the "employer" or a "joint employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA.

73.    Defendants directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit.  Further, Defendants ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the class members.

**Factual Background**

74.    Plaintiffs have worked as call center employees for Defendants, along with hundreds of other call center employees employed by Defendants during the three years prior to the filing of this action (the "Class Period").

75.    Plaintiffs' and their co-workers' duties include speaking via telephone with customers, former customers and potential customers of Defendants' internet, television, telephone and related services.

76.    Plaintiffs are typically scheduled to work for forty (40) hours per week.

77.    Plaintiffs and their co-workers arrive for work in the morning and typically begin the process of logging on to various computer programs they use in their duties, which can take several minutes.   These computer systems include Avaya, ICDEC, Total View, the NICE System, and the RT System.

78.  Plaintiffs and their co-workers are expected by their employers to be ready and available to receive telephone calls at the beginning of their scheduled shift time, by turning on their mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

79.  Plaintiffs and their co-workers are carefully monitored by Defendants' supervisors to determine their readiness for work at the beginning of their scheduled shift times.

80.  Plaintiffs are provided a two-minute "grace period" within which they must be ready and available to take calls.   If they are not ready and available within that time, they are considered late for work.

81.  Even though Plaintiffs are provided a two-minute grace period, this period is insufficient to capture all the time Plaintiffs spend getting to the "ready and available" status so Plaintiffs perform uncompensated work at the beginning of their shifts.   This time is not tracked by Defendants' payroll time keeping system.

82.  Defendants have required that Plaintiffs must log out of their "ready and available" status for both their two fifteen-minute breaks and their meal break, each shift that they work.

83.   Defendants require that Plaintiffs must also log out of their "ready and available" status within one minute of the end of their scheduled shift.

84.   The log-out process consists of operating certain computer programs that log the actual time that Plaintiffs leave their "ready and available" status and that log the actual time of day Plaintiffs return to their "ready and available" status; and which also log the actual time that the programs closes and the systems logs Plaintiffs out, after the "ready and available" status is logged out.

85.   The telephone calls taken by Plaintiffs are from live customers who typically express various questions and concerns about the customers' service, available equipment, upgrading or downgrading service, and similar matters.   The calls typically last an average of 5-30 minutes.

86.  As a result, Plaintiffs frequently are still involved with a telephone call at the end of their scheduled shift time.

87.  Nonetheless, Plaintiffs are required to log out from their "ready and available" status, within one minute of their scheduled shift time; and to complete the call.

88.  Plaintiffs frequently perform work during their meal periods, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors and reviewing call notes from previous call sessions.

89.  If Plaintiffs wish to be compensated for the time they have worked beyond their scheduled shift time, they must then affirmatively send an email to a management group called the "Force Team," setting forth the amount of time they continued to work beyond their scheduled shift.

90.  All Defendants maintain and control the software program "IEX", which is the shared software platform that manages the work schedules of all call center representatives nationwide, including Plaintiffs.

91.  All Defendants utilize the IEX schedules in that software platform to pay call center representatives according to their scheduled shifts, and not according to actual time worked, unless an "Exception" to the schedule is entered into the IEX software by a member of the Force Team.

92.  The email is submitted to an inbox that is reviewed by clerks on the Force Team.

93.  Plaintiffs and the other employees are only paid for time beyond their scheduled shift, including overtime, if they complete and submit out this form, even though Defendants have a contemporaneous electronic record of the actual time that Plaintiffs log out of their "ready

and available" status, after their scheduled shift time; and Defendants have a contemporaneous electronic record of the actual time that Plaintiffs close their programs.

94.   Plaintiffs and the other employees have been required to request to be paid for all time worked beyond their scheduled shift, or else they were not paid for that time worked, throughout the Class Period.

95.   Defendants are aware that Plaintiffs regularly worked incidental overtime that was unpaid.

> ### *i.     Defendants' Practice of Rounding Clocked Time*

96.  While working for Defendants during the Class Period, Plaintiffs would regularly arrive for work and begin working before the start time of their scheduled shift.

97.  While working for Defendants during the Class Period, Plaintiffs regularly performed work after the end time of their scheduled shifts, including but not limited to finishing calls in which they were involved at the end of the time of their scheduled shift.

98.  While working for Defendants during the Class Period, Plaintiffs regularly performed work during their meal periods.

99.   During the Class Period, Defendants have had records of the actual time when Plaintiffs and her coworkers actually finished calls in which they were involved at the time of and after the end of their scheduled shift time.

100. Defendants did not use those records for calculating Plaintiffs' and their coworkers' compensation.

101.   Instead, Defendants rounded the time from the actual time worked to the scheduled shift time, and the scheduled shift times, not the actual times, were then used to calculate and process payroll for Plaintiffs.

102.   During the Class Period, Plaintiffs and putative class members were regularly not paid for the additional straight time and overtime work performed prior to the start time of their scheduled shifts.

103.   During the Class Period, Plaintiffs and putative class members were not regularly paid for the additional straight time and overtime work performed during meal periods and after the end time of their scheduled shifts.

104.   Plaintiff Mosley estimates that she often worked approximately a minimum of two or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs have worked is in the exclusive possession and control of Defendants.

105.   Defendants' practice of rounding and failing to pay for time worked pre-shift and post-shift and instead rounding the time for which it would compensate Plaintiffs to their scheduled shift time is wide-spread and has occurred for a significant period of time during the last three years.

106.   The identity of the employees who worked prior to and after their scheduled shift times can be determined from the log out records themselves, which are required to be kept by the Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES**

**(Brought as a Collective Action by Plaintiff Tammy Mosley-Lovings Individually and on Behalf of All Others Similarly Situated)**

1-106.   Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs as if fully set forth in this Count.

107.   Plaintiff Mosley brings this count as a collective action on behalf of herself and other similarly situated persons pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

108.   Plaintiffs and the putative class members are hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers during the Class Period and whose daily log- in and log-out time was rounded and/or unpaid as described above.

109.   The proposed group of similarly situated persons is defined as:

> "All individuals who were and/or are currently employed by the Defendants, their subsidiaries, affiliates, predecessors and/or successors, as call center employees or other similarly titled positions at any time during the relevant statute of limitations whose actual log-in and log-out times were rounded to their detriment."

110.   Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective class of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

111. Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

112.   Plaintiffs and the putative class members were not paid for all hours worked in excess of 40 in a week, in violation of the maximum hours provisions of the FLSA, 29 U.S.C.

113.   Plaintiffs and the putative class members also were not paid a *bona fide* regular rate of pay for straight time hours worked when those hours were not tracked and accounted for, but were worked by these individuals.

114.   While working for Defendants, Plaintiffs and members of the putative class were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, that were necessary for the performance of their duties for Defendants, and that were integral and indispensable to their principal activities.   Despite this, Plaintiffs and other members of the collective class regularly were permitted or required to work "off the clock" as set forth herein that entitled them to compensation therefore.

115.   Defendants required and/or permitted Plaintiffs and the putative class members to

a.  work off the clock prior to the beginning of the call-center employee's scheduled shift; and

b. remain on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and off the clock, in the interest of the employer.

116. Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs and the similarly-situated employees.

117. Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

118. At all times relevant hereto, the action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records

was willful in that Defendants knew that the FLSA required them to pay one and one-half times the regular rate for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

119. As a direct and proximate result thereof, Plaintiffs and similarly situated call-center employees are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

120. Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

121. Plaintiffs estimate there are at least five hundred (500) individuals who are similarly situated as defined above.   The precise number of collective class members can be ascertained by using Defendants' payroll and personnel records.

WHEREFORE, Plaintiff Tammy Mosley-Lovings and the individuals who ultimately opt into this lawsuit pray for an Order of judgment against Defendants, jointly and severally, as follows:

A. Authorize notice at the earliest possible time informing the similarly situated call-center employees that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period;

B. Order the Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid employees employed by Defendants who currently or previously worked for Defendants in the United States within three years of the filing of the original Complaint, and whose time was rounded to their detriment;

C. Declare and find that the Defendants committed one or more of the following acts:

    i.  Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

    ii.  Willfully violated the overtime provisions of the FLSA; and

    iii. Willfully violated the record keeping provisions of the FLSA;

D.      Award compensatory damages, including all pay owed, in an amount according to proof;

E.      Award liquidated damages on all compensation due accruing from the date such amounts were due;

F.      Award all costs and reasonable attorneys' fees incurred in prosecuting this claim;

G.     Award pre-judgment and post-judgment interest, if permitted; and

H.     Order such further relief as the Court deems just and equitable.


JURY DEMANDED ON THIS AND ALL COUNTS

Date: July 16, 2018

                                        **Respectfully Submitted,**
                                        **TAMMY MOSELY,**
                                        **Individually and on Behalf of**
                                        **All Others Similarly Situated.**

                                        */s/ Jeffrey Grant Brown*
                                        JEFFREY GRANT BROWN
                                        Illinois Bar No. 6194262
                                        jeff@JGBrownlaw.com
                                        Admitted *Pro Hac Vice*
                                        Jeffrey Grant Brown
                                        Jeffrey Grant Brown, P.C.
                                        221 North LaSalle Street, Suite 1414
                                        Chicago, IL 60601
                                        Tel:  312.789.9700
                                        Fax: 312.789.9702

**GLEN J. DUNN, JR.**
Illinois Bar No. 6274852
GDunn@GJDlaw.com
Admitted *Pro Hac Vice*
Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414
Chicago, IL  60601
Tel:  312.546.5056
Fax: 312.546.

**J. DEREK BRAZIEL**
Texas Bar No. 00793380
jdbraziel@l-b-law.com

**TRAVIS GASPER**
Texas Bar No. 24096881
gasper@l-b-law.com

**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar St. Suite 325
Dallas, Texas  75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com