# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| | § | |
| TAMMY MOSLEY-LOVINGS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-cv-1145-X |
| | § | |
| AT&T SERVICES, INC., | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS
# <u>MOTIONS IN LIMINE</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARDS ........................................................................................................ 2

ARGUMENT ....................................................................................................................... 3

    I.     MOTION IN LIMINE NO. 1:  The Court Should Exclude Evidence of
         Timekeeping Practices Other Than Those Applicable to Plaintiff in the
         Dallas and Fort Worth Call Centers. ................................................................. 3

         A.     Evidence of Practices at Other Call Centers Should Be
                Excluded as Irrelevant, Confusing, and Misleading under
                Rules 401 and 403. .............................................................................. 3

         B.     Evidence of Practices Implemented *After* Plaintiff Filed Suit
                Are Subsequent Remedial Measures Barred by Rule 407. ................. 5

    II.    MOTION IN LIMINE NO. 2:  The Court Should Exclude Evidence
         Relating to Prior or Pending Litigation against AT&T Not Involving
         Plaintiff. .............................................................................................................. 9

    III.   MOTION IN LIMINE NO. 3:  The Court Should Exclude Evidence
         Relating to Claims of Individuals Who Are Not Parties to This Action .................... 12

    IV.   MOTION IN LIMINE NO. 4:  The Court Should Preclude Any
         Argument that IEX, CTI, HVD, or Any Other Logon/Logoff Data Can
         Establish Actual or Constructive Knowledge of Unreported Overtime .................... 14

    V.    MOTION IN LIMINE NO. 5:  The Court Should Exclude Evidence
         about HVD Data in Its Entirety. ....................................................................... 15

    VI.   MOTION IN LIMINE NO. 6:  The Court Should Exclude Evidence
         about and Reference to Plaintiff's Prior Discovery Complaints, the Data at
         Issue in Those Complaints, or Alleged Spoliation of Evidence. ................................ 17

    VII.  MOTION IN LIMINE NO. 7:  The Court Should Exclude Any Argument
         about or Reference to a Time "Rounding" Rule .......................................................... 20

    VIII. MOTION IN LIMINE NO. 8:  The Court Should Exclude Evidence
         about or Reference to Any "Missing Witnesses" No Longer Subject to
         AT&T's Control. ............................................................................................... 22

    IX.   MOTION IN LIMINE NO. 9:  The Court Should Exclude Evidence
         about and Reference to the Corporate Status or Financial Condition of
         AT&T, Its Parent Company, or Affiliates. ........................................................ 23

X.      MOTION IN LIMINE NO. 10:  The Court Should Exclude Evidence about and Reference to the Size or Characteristics of the Law Firm Representing AT&T................................................................................................. 24

XI.     MOTION IN LIMINE NO. 11:  The Court Should Exclude Statements before the Jury Accusing AT&T, Its Counsel, or Its Witnesses of Alleged "Lies" or "Misrepresentations." ....................................................................... 24

XII.    MOTION IN LIMINE NO. 12:  The Court Should Exclude Arguments and Allegations about FLSA Violations Not Pleaded in Plaintiff's Complaint. .............................................................................................................. 25

CONCLUSION............................................................................................................................. 25

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Adams v. Austal, U.S.A., L.L.C.,*
   754 F.3d 1240 (11th Cir. 2014) ......................................................................................... 13

*Baxter v. Anderson,*
   No. CV 16-142-JWD-RLB, 2018 WL 259918 (M.D. La. Jan. 2, 2018) ............................. 19

*Brazos River Auth. v. GE Ionics, Inc.,*
   469 F.3d 416 (5th Cir. 2006) ............................................................................................... 5

*Card v. E.H. Oftedal & Sons, Inc.,*
   No. 04–5036–KES, 2005 U.S. Dist. LEXIS 26375 (D.S.D. Mar. 23, 2005) ..................... 6

*Compaq Computer Corp. v. Ergonome, Inc.,*
   387 F.3d 403 (5th Cir. 2004) .............................................................................................. 11

*Contreras v. Aventura Limousine & Transportation Serv., Inc.,*
   13-22425-CIV, 2014 WL 11880996 (S.D. Fla. July 29, 2014) ........................................ 10

*Cox v. Stephens,*
   No. CIV.A. H-12-2776, 2013 WL 3713440 (S.D. Tex. July 12, 2013), *aff'd*, 602 F.
   App'x 141 (5th Cir. 2015) ............................................................................................ 16, 17

*Datatreasury Corp. v. Wells Fargo & Co.,*
   No. 2:06-CV-72 DF, 2010 WL 11468934 (E.D. Tex. Oct. 5, 2010) ................................ 22

*Eason v. Fleming Co., Inc.,*
   No. 92-1390, 1993 WL 13015208 (5th Cir. Aug. 24, 1993) .............................................. 2

*Elwell v. Univ. Hosps. Home Care Servs.,*
   276 F.3d 832 (6th Cir. 2002) ............................................................................................. 25

*Fairchild v. All Am. Check Cashing, Inc.,*
   815 F.3d 959 (5th Cir. 2016) ....................................................................................... 14, 15

*In re First City Bancorporation of Texas, Inc.,*
   270 B.R. 807 (N.D. Tex. 2001), *aff'd sub nom. In re First City Bancorp. of Texas Inc.,*
   282 F.3d 864 (5th Cir. 2002) ............................................................................................. 24

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.,*
   No. 3:11-CV-268 JD, 2016 WL 10706086 (N.D. Ind. Oct. 28, 2016) .............................. 23

*Estate of Hamilton v. City of New York,*
   627 F.3d 50 (2d Cir. 2010) .................................................................................................. 6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Harrell v. DCS Equip. Leasing Corp.,*
 951 F.2d 1453 (5th Cir. 1992) .......................................................................................... 11

*Harris v. City of Boston,*
 312 F. Supp. 2d 108 (D. Mass. 2004) ............................................................................... 10

*Hart v. RCI Hospitality Holdings, Inc.,*
 90 F. Supp. 3d 250 (S.D.N.Y. 2015) .................................................................................. 6

*Kelly v. Boeing Petroleum Servs., Inc.,*
 61 F.3d 350 (5th Cir. 1995) .............................................................................................. 25

*Lawson v. Graphic Packaging Int'l, Inc.,*
 549 F. App'x 253 (5th Cir. 2013) ..................................................................................... 13

*Lobo v. Sprint Safety, Inc.,*
 No. 4:19-CV-3934, 2020 WL 1659888 (S.D. Tex. Mar. 30, 2020) ................................ 25

*Marathon LeTourneau Co., Longview Div. v. N.L.R.B.,*
 699 F.2d 248 (5th Cir. 1983) ............................................................................................ 13

*Mascagni v. Schlumberger Tech Corp.,*
 CV 16-439, 2017 WL 3648315 (W.D. La. Aug. 22, 2017) .............................................. 10

*Mathis v. Exxon Corp.,*
 302 F.3d 448 (5th Cir. 2002) .............................................................................................. 2

*Moyer v. Siemens Vai Servs., LLC,*
 No. CV 11-3185, 2013 WL 12231277 (E.D. La. June 28, 2013) ..................................... 23

*Newton v. City of Henderson,*
 47 F.3d 745 (5th Cir. 1995) .............................................................................................. 14

*Novick v. Shipcom Wireless, Inc.,*
 946 F.3d 735 (5th Cir. 2020) .............................................................................................. 2

*Nuutinen v. CBS Corp.,*
 No. 97-C-678, 2015 WL 3645899 (E.D. Wis. June 9, 2015) ........................................... 22

*Orchestrate HR, Inc. v. Trombetta,*
 No. 3:13-CV-2110-KS, 2017 WL 273669 (N.D. Tex. Jan. 20, 2017) .............................. 18

*Palmer v. Bd. of Regents of University System of Ga.,*
 208 F.3d 969 (11th Cir. 2000) .......................................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Riley v. Ford Motor Co.*,
No. 2:09-CV-148-KS-MTP, 2011 WL 3273592 (S.D. Miss. July 29, 2011) ....................................23

*Roussell v. Brinker Intern., Inc.*,
CIV.A. H-05-3733, 2009 WL 595933 (S.D. Tex. Mar. 8, 2009).........................................................10

*Schrieber v. Federal Express Corp.*,
No. 09–CV–128–JHP–PJC, 2010 WL 1078463 (N.D. Okla. Mar. 18, 2010) ................................11

*Sherrod v. United Way of Tarrant Cty.*,
No. 4:17-CV-00758-O, 2018 WL 10435245 (N.D. Tex. Dec. 11, 2018).............................................2

*Snead v. EOG Resources, Inc.*,
5:16-CV-1134-OLG, 2018 WL 1151137 (W.D. Tex. Feb. 16, 2018) ................................................12

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008).............................................................................................................................12

*Stubblefield v. Suzuki Motor Corp.*,
No. 3:15-CV-18-HTW-LRA, 2018 WL 4610895 (S.D. Miss. Sept. 25, 2018) ...............................19

*Torres v. Rock & River Food Inc.*,
201 F. Supp. 3d 1373 (S.D. Fla. 2016) ..............................................................................................5

*Underwriters at Lloyd's London v. OSCA, Inc.*,
No. 03-20398, 2006 WL 941794 (5th Cir. Apr. 12, 2006)....................................................................5

*United States v. Rios*,
636 F.3d 168 (5th Cir. 2011)................................................................................................................22

*Vital v. Varco*,
No. CV H-12-1357, 2015 WL 7736637 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom.*
*Vital v. Nat'l Oilwell Varco, L.P.*, 685 F. App'x 355 (5th Cir. 2017)................................................25

*Whitehead v. Food Max Inc.*,
163 F.3d 265 (5th Cir. 1998)...............................................................................................................24

**Statutes**

29 U.S.C. § 211(c) ...............................................................................................................................25

29 U.S.C. § 255(a) .................................................................................................................................9

29 U.S.C. § 260 ......................................................................................................................................9

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Rules**

Fed. R. Evid. 401 ............................................................... 2, 4, 9, 10, 12, 13, 14, 15, 17, 18, 21, 23, 24, 25

Fed. R. Evid. 402 .....................................................................................2, 12, 13, 14, 17, 21, 24

Fed. R. Evid. 403 ...........................................................2, 4, 5, 9, 11, 13, 16, 17, 19, 21, 22, 24, 25

Fed. R. Evid. 404(b)................................................................................................................2

Fed. R. Evid. 404(b)(1)..........................................................................................................11

Fed. R. Evid. 407 .................................................................................................. 2, 5, 6, 7

**Regulations**

29 C.F.R. § 785.48(b)...................................................................................................... 20, 21

## INTRODUCTION

This is a single-plaintiff case seeking unpaid overtime under the federal Fair Labor Standards Act.  Accordingly, the questions for the jury in this case are whether Plaintiff worked unreported time outside her regular work schedule in excess of 40 total work hours in a week and whether AT&T Services, Inc. ("AT&T") had actual or constructive knowledge of that fact.  Despite that straightforward focus, Plaintiff's briefing, witness list, and pre-trial designations reflect an intent to enlarge the trial into a sprawling inquiry about other employees' individualized complaints; other call centers' timekeeping procedures; and other litigation against AT&T.  None of that evidence tends to make any fact of consequence in determining *Plaintiff*'s claim more or less likely, and all of it is likely to be both time-consuming and confusing to jurors.  Accordingly, such evidence should be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.

Among such extraneous evidence, Plaintiff apparently intends to offer testimony purporting to describe recently implemented changes to timekeeping practices at a San Antonio call center at which Plaintiff never worked, from a time long after Plaintiff's employment had ended.  In addition to bearing no relevance to Plaintiff's individual claim—which relates exclusively to practices in Dallas and Fort Worth call centers (not San Antonio) from 2015 through 2018 (not 2020)—evidence of changed practices that long post-date Plaintiff's employment is clearly barred under Rule 407.

Plaintiff also apparently intends to rely on AT&T phone and computer system records, presumably in an attempt to imply that AT&T "could have" inspected such data to determine employee time worked.  But as the Court held in ruling on the parties' motions for summary judgment, this argument is precluded by clearly established Fifth Circuit case law, which holds that mere access to such computer log data cannot establish knowledge of unpaid overtime.  Accordingly, Plaintiff should not be permitted as a matter of law to suggest that AT&T's potential access to such data constitutes evidence of actual or constructive knowledge of work performed outside her schedule.

Finally, Plaintiff should be precluded from introducing various irrelevant and prejudicial statements, testimony, or evidence related to such matters as witnesses outside AT&T's control, AT&T's financial status, or the parties' since-resolved discovery disputes, none of which have legitimate bearing on the fact issues in this case and all of which are likely to inject irrelevant and improper considerations into jury deliberations.

## LEGAL STANDARDS

Federal Rule of Evidence 401 "defines relevant evidence as that which has 'any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (quoting Fed. R. Evid. 401). Rule 402, in turn, provides "that 'irrelevant evidence is not admissible.'" *Sherrod v. United Way of Tarrant Cty.*, No. 4:17-CV-00758-O, 2018 WL 10435245, at *1 (N.D. Tex. Dec. 11, 2018) (quoting Fed. R. Evid. 402).

A court may exclude even relevant evidence, however, if the "probative value" of that evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "To determine whether evidence should be excluded pursuant to Rule 403, courts must balance the prejudicial effect of the evidence against its likely probative value." *Eason v. Fleming Co., Inc.*, No. 92-1390, 1993 WL 13015208, at *4 (5th Cir. Aug. 24, 1993).

Under Rule 407, evidence of "subsequent measures is not admissible to prove negligence [or] culpable conduct" when the measures taken "would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407; *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 739 (5th Cir. 2020). And evidence of a wrong or other act also "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b).

## ARGUMENT

I.  **MOTION IN LIMINE NO. 1:  The Court Should Exclude Evidence of Timekeeping Practices Other Than Those Applicable to Plaintiff in the Dallas and Fort Worth Call Centers.**

Under Federal Rules of Evidence 401, 402, 403, and 407, this Court should exclude evidence relating to timekeeping practices other than those in use at the AT&T call centers at which Plaintiff worked.  Based on Plaintiff's pretrial submissions, it appears she intends to introduce evidence or testimony relating to time reporting practices at other call center locations, including erroneous testimony regarding a change in procedures just this year at a call center in San Antonio.  *See* Dkt. 229, at 2 (stating that witness Cedric Harrington will testify to "Changes in AT&T's timekeeping and payroll policies"); Dkt. 197, at 2–3 (relying on Declaration of Cedric Harrington to allege that AT&T now "*automatically* record[s] and report[s] incidental overtime" (emphasis in original)).  Such evidence is not only irrelevant, confusing, and unduly prejudicial, but—for San Antonio and any other center that has changed its practices in recent years—violates Rule 407's prohibition on the introduction of subsequent remedial measures to imply culpability.

A.  **Evidence of Practices at Other Call Centers Should Be Excluded as Irrelevant, Confusing, and Misleading under Rules 401 and 403.**

Evidence of local timekeeping practices at any center other than those at which Plaintiff worked should be barred under Rules 401 and 403.  Such evidence does not tend to make any fact of consequence in determining Plaintiff's claim—which relates exclusively to practices in Dallas and Fort Worth call centers—more or less likely.  Instead, such evidence raises a substantial risk of confusing or misleading the jury by insinuating that it ought to "compare" practices.

First and most obviously, evidence of timekeeping practices in other call centers where Plaintiff never worked is irrelevant to the actual issues before the Court.  As explained in AT&T's previous briefing, while each call center operates under a company-wide policy of compliance with the FLSA and applicable state wage and hour laws, the mechanics and administrative practices

associated with timekeeping vary by center.  *See* Dkt. 125, at 8–9.  This is due to differences in the business unit being supported, staffing requirements, and manager preference.[1]  Moreover, these practices, as in any large organization, evolve and change over time and across locations.  *See* Dkt. 198, at 11–12.  Plaintiff was employed exclusively at AT&T's call centers in Dallas and Fort Worth.  Thus, any evidence about practices or systems in use at *other* centers does not make it more or less probable that Plaintiff can prove that she worked time at Dallas or Fort Worth for which she is entitled to receive overtime pay.  *See* Fed. R. Evid. 401 (relevant evidence is that which has any tendency to make the existence of any fact *of consequence to the determination of the action* more or less probable than it would be without the evidence).

Plaintiff may argue that AT&T's decision to employ different timekeeping practices in other business units and locations is relevant to whether the company knows that some incidental overtime goes unreported.  But the mere existence of a different practice does not somehow establish a "generalized" state of knowledge that some time goes unreported.  And, even if it could, that would not equate to the specific knowledge relevant to *this* case—knowledge of whether Plaintiff herself actually worked, but failed to report, incidental time in a week in which she worked in excess of 40 total hours.  Moreover, any potential argument about "knowledge" is particularly misplaced as a justification for introducing evidence of practices at other locations *after* Plaintiff's employment ended.

Any possible probative value of evidence regarding timekeeping practices at other centers would also be substantially outweighed by a likelihood of unfair prejudice and confusion.  Fed. R. Evid. 403.  "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis." Advisory Committee's Notes, Fed. R. Evid. 403.  The suggestion here—namely, that AT&T "should have" used some other time reporting system in 2015-2018 in Dallas and Fort Worth—is wholly

---

[1]  In light of these and other differences, Plaintiff conceded decertification of the former collective, *see* Dkt. 133; Dkt. 178, and this Court denied Plaintiff's belated motion for leave to add additional party-plaintiffs from other call centers to this lawsuit, *see* Dkt. 220.

improper, as is any suggestion that the jury can choose a preferred timekeeping approach from among systems utilized at other call centers. Such evidence has the potential to confuse or mislead the jury by suggesting that it should *compare* timekeeping practices, or evaluate whether an employer has chosen the "best" timekeeping practice. But the issue to be resolved here is whether the exception timekeeping practice to which Plaintiff was subject in the Dallas and Fort Worth call centers was lawful—not whether some other practice might conceivably have been "better." And exception timekeeping is undoubtedly legal. 29 C.F.R. § 516.2(c) (authorizing use of exception timekeeping practices under the FLSA).

Evidence of AT&T's timekeeping practices in locations and business units in which Plaintiff never worked is, in short, a sideshow, designed to distract attention from the actual lawful timekeeping practice and the facts relevant to Plaintiff. Accordingly, this evidence should be precluded under Rules 401, 402, and 403.

## B. Evidence of Practices Implemented *After* Plaintiff Filed Suit Are Subsequent Remedial Measures Barred by Rule 407.

Plaintiff's proposed evidence of recent timekeeping changes at an AT&T call center in San Antonio is also squarely precluded by Federal Rule of Evidence 407. Rule 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct." Fed. R. Evid. 407. The Fifth Circuit has recognized that Rule 407 applies, as relevant here, "to exclude [from evidence] . . . changes in company rules." *Underwriters at Lloyd's London v. OSCA, Inc.*, No. 03-20398, 2006 WL 941794, at *4 (5th Cir. Apr. 12, 2006); *see also Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 428 (5th Cir. 2006) (explaining that "courts have excluded remedial measures because their admission would unduly risk that the factfinder would imply culpability for the injury or harm alleged").

Courts often find policy or procedure changes in the FLSA context—including changes to timekeeping procedures—subject to exclusion under Rule 407. *See, e.g., Torres v. Rock & River Food*

*Inc.*, 201 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016) (Rule 407 barred evidence of defendants' new timecard and record-keeping procedures for purposes of proving liability in FLSA collective action); *Card v. E.H. Oftedal & Sons, Inc.*, No. 04–5036–KES, 2005 U.S. Dist. LEXIS 26375, at *1 (D.S.D. Mar. 23, 2005) (employer's change in procedures to keep accurate hours after an employee's suit for unpaid overtime was properly excluded under Rule 407); *Estate of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (changes to a promotion process after the plaintiff's employment discrimination suit constituted subsequent remedial measures barred by Rule 407).  In so doing, courts have recognized the social policy underlying Rule 407—that a company's efforts to update and refine its procedures over time should be encouraged, rather than punished.  *See* Fed. R. Evid. 407, Advisory Comm.'s Note ("the more impressive[] ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety, [including] . . changes in company rules"); *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 279 (S.D.N.Y. 2015) ("emphatically" ruling that evidence of defendant's post-litigation actions at other business locations was inadmissible because defendant's actions "self-evidently reflect[ed] a business reality: the fact that the [defendant] had been sued in this case and foresaw the risk of future lawsuits").

Plaintiff seeks to introduce textbook Rule 407 evidence: A change in timekeeping practices, implemented years *after* Plaintiff filed this lawsuit, that she asserts reduces the potential for unreported work time to go unpaid.  *See* Fed. R. Evid. 407.  While AT&T disputes Plaintiff's description of the San Antonio practices, it is clear that Plaintiff herself views the recent change as both subsequent and remedial.  *See, e.g.*, Dkt. 197, at 2 (claiming that litigation brought by Plaintiff and other call center associates "induced" AT&T to "change its timekeeping and payroll policies and practices"); Dkt. 229, at 2–3 (listing witnesses to discuss "the change in AT&T Timekeeping and payroll practices").  And Plaintiff's briefing also makes clear that the purpose of introducing this evidence is to demonstrate AT&T's culpability.  *See* Dkt. 197, at 3 (asserting that "AT&T shirked its non-delegable duty to record

and report the time worked" and "has now resolved that inconsistency").  Plaintiff's claim, arising solely from her work at the Fort Worth and Dallas call centers, however, must be evaluated on its own merits—not judged in hindsight against any subsequent "steps in furtherance of" additional protections for its employees that AT&T may have elected to take long after Plaintiff's employment had ended.  Put another way, AT&T should not be penalized for experimenting with varied, lawful means of attempting to identify employees' incidental overtime.  *See* Fed. R. Evid. 407, Advisory Committee's Note (articulating Rule 407's "social policy of encouraging people to take . . . steps in furtherance of added safety").  And because Plaintiff's description of the current timekeeping practices is incorrect, AT&T also would have to respond to Plaintiff's attempts to prejudice the jury by pointing to a supposed "automatic" system with its own testimony regarding how the system actually works, further distracting the jury from the actual issues in this case.

AT&T anticipates that Plaintiff may try to avoid the exclusion of this evidence by arguing that, under Rule 407, evidence of a subsequent remedial measure may be admitted for a purpose other than to show culpability, such as for "impeachment or—if disputed—proving . . . the feasibility of precautionary measures."  Fed. R. Evid. 407.  But such arguments are meritless.

While Plaintiff's description of recent changes to practices in the San Antonio call center are vague and largely speculative, AT&T has ***never disputed*** the feasibility of potential alternative timekeeping practices including the ***actual system in use*** at San Antonio and has no intention of doing so at trial.[2]  Neither Plaintiff's claim nor AT&T's defense turns on the feasibility of that subsequently implemented practice or the multitude of other time reporting methods that *could*

---

[2]  AT&T has previously explained that (1) its payroll software cannot read CTI log-in/log-off data and thus cannot "automatically" record unreported time, *see, e.g.*, Dkt. 183, at 14; Dkt. 192, at 13; Dkt. 198, at 13, and (2) CTI log-in/log-off data is an unreliable indicator of actual time worked as it is both under- and over-inclusive, *see, e.g.*, Dkt 192, at 13; Dkt. 198, at 13.  Both remain true. And neither point is contradicted by the manual audit measures recently undertaken in San Antonio.

potentially be used.  Rather, they ask whether the particular method actually employed at the locations where Plaintiff worked during the time that she worked there was itself lawful.  Because AT&T has never argued—and will not argue at trial—that some other approach was not feasible, Plaintiff should not be allowed to smuggle into trial extraneous evidence of practices adopted at other locations, at other times, and under other circumstances than those in which Plaintiff worked.[3]

Plaintiff may also argue that she offers evidence of subsequently changed practices to "impeach" statements of AT&T's witnesses.  But there is nothing to "impeach."  AT&T has never suggested—and does not intend to suggest at trial—that the administrative measures recently implemented in San Antonio could not be adopted; rather, it has simply noted that its payroll software does not "automatically" interface with its phone system, and that CTI log-off data is unreliable in a number of respects as a time-keeping record.  Dkt. 183, at 14; Dkt. 192, at 13; Dkt. 198, at 13. Plaintiff's vague assertions regarding the San Antonio call center's new administrative measures contradict neither of those simple facts.  Plaintiff should not be permitted to introduce evidence otherwise barred by multiple Federal Rules solely based on her own hyperbolic, but mistaken, speculation about the measures adopted, or her mischaracterization of AT&T's arguments.  *See, e.g.*, Dkt. 197, at 2 (wrongly describing the new system and calling the change "an indictment of AT&T" for "claiming it couldn't do what is now being done").  Absent an assertion at trial that could be impeached by such evidence, Rule 407 clearly prevents Plaintiff from introducing evidence of subsequent changes in AT&T's practices.

In sum, Plaintiff should be precluded from misusing this evidence by seeking to establish any form of culpability on the part of AT&T based on steps taken to further evolve and refine its timekeeping processes and procedures, particularly those taken long after Plaintiff's own employment

---

[3]  Of course, if Plaintiff is allowed to do so, AT&T will have no choice but to explain why it preferred and maintained its exception timekeeping practice rather than some alternative identified or proposed by Plaintiff.

ended.  Accordingly, this Court should preclude any mention of practices to which Plaintiff was never subject, including subsequent remedial measures, either through the introduction of documents, witness testimony, or comment by Plaintiff's counsel.[4]

## II.   MOTION IN LIMINE NO. 2:  The Court Should Exclude Evidence Relating to Prior or Pending Litigation against AT&T Not Involving Plaintiff.

Plaintiff has indicated that she is likely to rely on the existence of other litigation against AT&T to support her arguments that, among other things, AT&T willfully violated the FLSA or did not act in good faith.  In her summary judgment briefing, for example, Plaintiff alleged that AT&T "has been subjected to numerous lawsuits" relating to unpaid, off-the-clock work.  *See* Dkt. 186, at 24–25 (noting lawsuits as purported evidence of "Defendant's Willful Conduct"); *id.* at 25–26 (noting lawsuits as purported evidence of "Defendant's Lack of Good Faith"); *see also* Dkt. 228, at 5 (listing among trial exhibits deposition transcripts of individuals in prior *LaMarr* litigation in the Midwest).  This evidence, however, is irrelevant either as to willfulness and good faith *or* to the merits of Plaintiff's claim, carries a high likelihood of prejudice or confusion of the issues, and is improper evidence of alleged "prior bad acts."  Accordingly, it should be excluded under Federal Rules of Evidence 401, 403, and 404(b).

First, evidence of other litigation to demonstrate willfulness or contest good faith is wholly irrelevant here, and would only result in undue delay and waste of time.  *See* Fed. R. Evid. 401; Fed. R. Evid. 403.  Under the FLSA, evidence of "willfulness" is relevant only to prove that a three-year statute of limitations applies to the purported violations, 29 U.S.C. § 255(a), and a defendant's "good

---

[4]  It appears that Plaintiff intends to rely on testimony from former opt-in Cedric Harrington to offer speculation about recent changes in administrative processes at the San Antonio call center. *See* Dkt. 229, at 2 (stating that Harrington will testify to "Changes in AT&T's timekeeping and payroll policies").  Mr. Harrington's anticipated testimony has not been the subject of any discovery or fact development, and AT&T has had no opportunity to depose him about this or any other topic.  Thus, even if this evidence were not otherwise properly excluded, forcing AT&T to investigate Mr. Harrington's claims and produce rebuttal witnesses to provide a full response to his tangential allegations for the first time at trial without any previous opportunity for discovery would unfairly prejudice AT&T.

faith" is relevant only as a defense against the imposition of liquidated damages, 29 U.S.C. § 260. But here, AT&T has stipulated that (1) the applicable time period in this case is three years preceding the filing of Plaintiff's complaint, and (2) it does not intend to argue for a reduction of liquidated damages, if any, on the basis of good faith. *See* Dkt. 227, at 5. Thus, because neither willfulness nor good faith is at issue, evidence of prior lawsuits for those purposes is entirely irrelevant and should be excluded. *See Roussell v. Brinker Intern., Inc.*, CIV.A. H-05-3733, 2009 WL 595933, at *1 (S.D. Tex. Mar. 8, 2009) (explaining that "the issue of willfulness is no longer material to any of the triable issues given that the statute of limitations and the good faith defense are no longer at issue such that evidence of willfulness would be confusing and cause undue delay"); *Contreras v. Aventura Limousine & Transportation Serv., Inc.*, 13-22425-CIV, 2014 WL 11880996, at *1 (S.D. Fla. July 29, 2014) (explaining that "should Defendants concede the existence of a three (3) year statute of limitations, then the relevance of the prior lawsuits would greatly dissipate"); *Harris v. City of Boston*, 312 F. Supp. 2d 108, 117 (D. Mass. 2004) (noting that defendant conceded at oral argument that three-year statute of limitations applied, so there was nothing for the court to decide on willfulness).

Second, evidence of other lawsuits against AT&T is not probative of any issue relating to the *merits* of Plaintiff's claim. *See* Fed. R. Evid. 401. None of the cases Plaintiff referenced in her summary judgment briefing have been decided on their merits, and mere allegations in cases resolved without any finding of culpability are not probative of knowledge of unpaid work, much less knowledge specific to Plaintiff's particular alleged unpaid work. *Cf. Mascagni v. Schlumberger Tech Corp.*, CV 16-439, 2017 WL 3648315, at *7 (W.D. La. Aug. 22, 2017) (rejecting evidence of prior litigation involving claims that employer violated overtime rules and explaining that "all of the cases Plaintiff cites either settled, were overturned on appeal, or remain pending" and that "[n]o court in any of the proceedings ever ruled that [defendant] violated the FLSA's overtime compensation provisions"). The cases referenced are particularly irrelevant as all are in different jurisdictions, originating from different

offices, business units, or practices.  *See, e.g., Palmer v. Bd. of Regents of University System of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000) (affirming exclusion of evidence of other lawsuits against defendant when complaints involved different decision-makers, different departments, and different [] processes). Further, two of the four cases Plaintiff referenced were filed by *the same Plaintiff's counsel*, raising cookie-cutter allegations against AT&T.  Dkt. 192, at 39.  That Plaintiff's counsel has filed multiple actions in various jurisdictions under the same theory—with no findings of liability—has no relevance to the viability of Plaintiff's particular claim in this Court.

Third, evidence of other lawsuits should be excluded as highly likely to confuse jurors or cause them to reach a verdict on an improper basis.  *See* Fed. R. Evid. 403 (permitting a court to exclude even relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury).  Jurors might be misled into concluding that Plaintiff's claims have merit based not on the facts before them in this Court, but because other cases have been filed against AT&T in other courts or other jurisdictions based on other alleged facts.  *See, e.g., Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403, 409 (5th Cir. 2004) (holding that even if evidence of other lawsuits against defendant may have been probative, such evidence tended to paint the defendant as a "bad" company and was properly excluded under Fed. R. Evid. 403); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1992) (affirming grant of defendant's motion in limine to preclude introduction of evidence about other lawsuits); *Schrieber v. Federal Express Corp.*, No. 09–CV–128–JHP–PJC, 2010 WL 1078463, *4 (N.D. Okla. Mar. 18, 2010) (allowing the jury "to hear that the prior litigation was settled leads to an inference that [defendant] admitted liability in that suit which is improper and irrelevant under Federal Rules of Evidence 401 and 403").

Finally, even if any of the prior or pending allegations in other jurisdictions had merit (they do not) or had been adopted by any court (they have not), testimony or evidence regarding these lawsuits would be inadmissible as evidence of "prior bad acts."  Under Federal Rule of Evidence 404(b),

evidence of a "wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *Snead v. EOG Resources, Inc.*, 5:16-CV-1134-OLG, 2018 WL 1151137, at *2 (W.D. Tex. Feb. 16, 2018) (rejecting proffered evidence of prior litigation under Rule 404(b) and explaining that "it is unclear how the prior claims of other former [employees] are relevant to Plaintiff's contention that Defendant misclassified him aside from the contention that [defendant] has a 'character' of violating the FLSA"). Plaintiff cannot be permitted to introduce evidence that AT&T has been sued in the past for wage-and-hour violations to insinuate that AT&T has a "character" of violating the FLSA or that there is likely an FLSA violation in the present case, particularly where none of the cases resulted in a finding of liability.

In sum, Plaintiff should be prohibited from introducing any evidence, testimony, or comments about other lawsuits filed against AT&T under Rules 401, 402, 403, and 404(b).

## III.   MOTION IN LIMINE NO. 3:  The Court Should Exclude Evidence Relating to Claims of Individuals Who Are Not Parties to This Action.

AT&T also anticipates that Plaintiff will attempt to rely on testimony or evidence of other individuals' complaints against AT&T. In particular, Plaintiff has indicated that she may attempt to call a number of former opt-in claimants who have been dismissed from this action to testify at trial. *See* Dkt. 229, at 2–3 (listing multiple former opt-in plaintiffs as probable and possible witnesses). Plaintiff also relied heavily on testimony and documents from former opt-in plaintiffs in her summary judgment briefing. *See* Dkt. 186, at 11, 13, 19, 23. But other individuals' claims of alleged unpaid overtime, or their subjective beliefs regarding AT&T's timekeeping practices, are irrelevant to whether *Plaintiff* ever worked overtime for which she was not paid and whether AT&T had knowledge of that time. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

Courts regularly exclude such "me too" evidence in the employment context, particularly when the other employees' claims arise from different experiences with different supervisors, different work

Defendant's Memorandum of Law in Support of its Omnibus Motions in Limine – Page 12

locations, or different business units within a company. *See, e.g., Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (discussing exclusion of evidence of employees working under different supervisors and at different times than plaintiff); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258 (11th Cir. 2014) (holding district court properly could exclude "me too" evidence under Rule 401 where defendant employed "over 2,000 workers across many departments and in different locations" and where the "response in one department or from one supervisor might vary greatly from another department or supervisor"); *see also Marathon LeTourneau Co., Longview Div. v. N.L.R.B.*, 699 F.2d 248, 253–54 (5th Cir. 1983) (affirming exclusion of exhibit describing other employees' terminations as irrelevant because it had no probative value as to whether plaintiff could prove her case).

The same issues arise here—all of the former opt-in claimants Plaintiff proposes to call as witnesses held a different job than Plaintiff (working as RMRs rather than PSTAs) with different responsibilities and different daily schedules. *See* Dkt. 188-1 (Defs. MSJ App'x 41) (explaining that "[a]s a PSTA Ms. Mosley-Lovings would not take incoming customer calls from the call queue as do Revenue Management Representatives ("RMRs"), and accordingly she would not log her availability to receive calls and other information in CTI in the same way as do RMRs"). Thus, evidence relating to their own alleged claims or experiences is not relevant to whether Plaintiff worked more than 40 hours per week in her particular job at the Dallas or Fort Worth center for which she was not paid or whether AT&T can be charged with knowledge of such work. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

Moreover, even if testimony and allegations relating to other current or former employees' claims were arguably relevant to whether Plaintiff herself can demonstrate unpaid off-the-clock work, such evidence would be subject to exclusion under Rule 403 because its probative value is "substantially outweighed by . . . confusion of the issues," "misleading the jury" and a "waste of time." Fed. R. Evid. 403. If Plaintiff were permitted to introduce other employees' assertions about their

own alleged unpaid time, AT&T would be forced to respond in detail to each witness's individual allegations even though none of them are properly before this Court nor matters for which Plaintiff is entitled to redress. *See, e.g., Lawson v. Graphic Packaging Int'l, Inc.*, 549 F. App'x 253, 256 (5th Cir. 2013) (holding that detailed testimony regarding individual employees not party to the suit was properly excluded under Fed. R. Evid. 403). The prospect of conducting numerous "mini-trials" on other employees' varied and factually diverse claims, stemming from work in other job positions, at other times, and under other supervisors, is a powerful reason to exclude evidence about their separate claims, and indeed is among the reasons that this Court decertified Plaintiff's proposed collective and denied Plaintiff's late attempt to join additional party-plaintiffs. *See* Dkts. 178, 220.

Accordingly, AT&T requests that Plaintiff, her counsel, and witnesses be precluded from introducing evidence relating to claims by any individual other than Plaintiff, including any former opt-in plaintiff in this action and any plaintiffs or opt-ins in other actions filed by current or former AT&T employees pursuant to Federal Rules of Evidence 401, 402, and 403.

## IV.    MOTION IN LIMINE NO. 4:  The Court Should Preclude Any Argument that IEX, CTI, HVD, or Any Other Logon/Logoff Data Can Establish Actual or Constructive Knowledge of Unreported Overtime.

The Court should preclude any testimony, argument, or suggestion that the existence or use for other purposes of IEX, CTI, or HVD data (or any other logon/logoff data) establishes actual or constructive knowledge by AT&T of Plaintiff's alleged unreported overtime. Under the law of this Circuit, neither the existence nor the contents of these data have "any tendency" to make it "more or less probable" that AT&T had knowledge of Plaintiff's unscheduled, unreported time. *See* Fed. R. Evid. 401; Fed. R. Evid. 402.

Plaintiff repeatedly has argued that AT&T's access to IEX, CTI, and HVD systems data demonstrates actual or constructive knowledge that Plaintiff worked time outside of her scheduled shift for which she was not paid. *See, e.g.*, Dkt. 197, at 14–15, 17–18. But as this Court recognized in

its recent order regarding summary judgment—and as courts in this Circuit have long made clear—such data "is legally insufficient to establish actual or constructive knowledge" of alleged overtime. *See* Dkt. 220, at 7; *accord Fairchild v. All Am. Check Cashing. Inc.*, 815 F.3d 959 (5th Cir. 2016); *Newton v. City of Henderson*, 47 F.3d 745 (5th Cir. 1995). In *Fairchild v. All American Check Cashing Inc.*, for instance, an employee argued that her "computer usage reports," which "allegedly show[ed] she was working after 'clocking out,' prove[d] that [her employer] had constructive knowledge that she was working overtime." 815 F.3d 959, 965 (5th Cir. 2016). The Fifth Circuit, however, found this argument "unavailing," explaining that "mere 'access' to this information is insufficient for imputing knowledge." *Id.* As this Court recently observed, under such cases "indirect evidence of overtime in the possession of an employer does not qualify as actual or constructive knowledge . . . and something more than indirect evidence is required." *See* Dkt. 220, at 9.

AT&T's possession of and access to IEX, CTI, and HVD data is insufficient to impute knowledge of alleged overtime as a matter of law, particularly where there is no evidence that AT&T relied on any of this data for timekeeping purposes with respect to Plaintiff. Because IEX, CTI, and HVD data are irrelevant to the issue of knowledge, Plaintiff should be precluded from arguing or insinuating that AT&T "knew" or "should have known," based on the existence or contents of this data, that Plaintiff worked hours in excess of her schedule during the particular weeks she has identified as at issue in this trial.

## V.     MOTION IN LIMINE NO. 5:  The Court Should Exclude Evidence about HVD Data in Its Entirety.

In addition to excluding all logon and logoff data for the purpose of showing knowledge, this Court should exclude in its entirety any evidence about HVD data under Rules 401, 402, and 403 because it is not only irrelevant to Plaintiff's ability to prove her claims, but exceedingly likely to confuse or mislead the jury.

To start, HVD data cannot "make the existence of any fact that is of consequence to the

determination of" Plaintiff's action for unpaid overtime "more probable or less probable." *See* Fed R. Evid. 401. Rather, HVD data is irrelevant to Plaintiff's case because it was not used for any purpose (or even accessible to employees) at the Dallas and Fort Worth call centers where Plaintiff worked— much less for scheduling, timekeeping, or payroll. HVD systems are cloud-supported virtual desktops, meaning there is no local computer. Dkt. 183, at 8. Instead, a call center representative's workstation connects directly to data and applications running on AT&T's servers. *Id.* AT&T's systems record limited information about when user accounts connect to, disconnect from, or end a session on the HVD computer system. Dkt. 192, at 13. But this data does not identify when a user *intentionally* logged out; instead, it includes "disconnects and ends" that "are generated by a host of various reasons" at various times throughout the day and night. *See* Dkt. 183, at 18. In other words, it is not possible to identify reliably when a log-out reflects an intentional action by Plaintiff, a log-out by a coworker where Plaintiff may have left without completely logging out, or the involuntary operation of a computer or software program. *Id.* Because the data do not and cannot show Plaintiff's actual time worked, they are irrelevant to her claims and should be excluded.

Even if HVD data did carry any probative value, such value would be substantially outweighed by near-certain juror confusion and distraction. *See* Fed. R. Evid. 403. To determine probative value, a court should consider "how compellingly the evidence serves to make a fact of consequence more or less probable." *Cox v. Stephens*, No. CIV.A. H-12-2776, 2013 WL 3713440, at *7 (S.D. Tex. July 12, 2013), *aff'd*, 602 F. App'x 141 (5th Cir. 2015). The probative value of HVD data is exceedingly low. For instance, the HVD data implausibly suggest that Plaintiff worked on various days until 3:14 a.m., 3:29 a.m., and 4:04 a.m., even though her call center location closed many hours earlier. Dkt. 183, at 25. The HVD data also show that, for the entire month of September 2017, Plaintiff logged into the system, on average, 12.5 minutes after her shift appears to begin. *Id.* Neither party seriously contends that Plaintiff regularly worked until 3:00 a.m. or 4:00 a.m. in the morning, nor will Plaintiff concede

that she began work 12 minutes late every day for an entire month.

Evidence of systems data riddled with complicated and irrelevant system disconnects is highly likely to "confuse or distract the jury from the primary issues" in this case or to "be given undue weight by a jury not properly equipped to evaluate its probative value." *Cox*, 2013 WL 3713440, at *7 (citing Fed. R. Evid. 403). This likelihood is exacerbated by the fact that Plaintiff's counsel repeatedly has inaccurately or only vaguely described both the nature and utility of HVD data. *See, e.g.*, Dkt 174, at 8 (erroneously describing HVD data as "exactly the same" as Network Access Logon Data with "merely . . . a different label"); Dkt. 186, at 21 (ignoring the inconsistent and sporadic log-in and log-off times and insisting only that HVD data reveals log-outs after the end of Plaintiff's shift). The data is also available only from August 2017 through March 2018, both decreasing its utility and increasing the likelihood of juror confusion.[5] Accordingly, Plaintiff should be precluded from introducing or referring to HVD data as it is irrelevant to Plaintiff's claim and carries a high likelihood of distracting the jurors and confusing the issues in this case. *See* Fed. R. Evid 401, Fed. R. Evid. 403.

## VI.   MOTION IN LIMINE NO. 6:  The Court Should Exclude Evidence about and Reference to Plaintiff's Prior Discovery Complaints, the Data at Issue in Those Complaints, or Alleged Spoliation of Evidence.

This Court should preclude any mention of the parties' discovery disputes or any argument or allegation that AT&T spoliated or belatedly produced evidence, particularly as relating to HVD data, "network access logon data" and "local computer log data," or adherence reports. For example, Plaintiff has spilled much ink in recent submissions suggesting that HVD data was "belatedly-produced" "only as an after-thought, after the close of discovery" or that other forms of data have been improperly withheld. *See, e.g.*, Dkt. 186, at 20. Any dispute over the production of data was resolved through a motion to compel in front of Magistrate Judge Horan, thus Plaintiff's allegations

---

[5] Prior to August 14, 2017, the Fort Worth and Dallas call centers used local computers at the revenue management representative workstations rather than HVD, so HVD data does not exist for Plaintiff before this date. *See* Dkt. 183, at 15.

are not only irrelevant to Plaintiff's claim to be tried, but carry substantial potential to mislead or prejudice the jury. *See* Fed. R. Evid. 401; Fed. R. Evid 402; Fed. R. Evid. 403.

Plaintiff and AT&T engaged in briefing and argument regarding various forms of data that Plaintiff believed relevant to her claims and Facebook data that AT&T had sought. For its part, AT&T moved to compel the production of unredacted copies of a Facebook group chat, where Plaintiff discussed her lawsuit with nonparties. *See, e.g.*, Dkt. 131. And in response to Plaintiff's motion to compel, AT&T explained that the data Plaintiff sought—local computer log data and network access logon data—did not exist for Plaintiff. Dkt. 134; Dkt. 145-1, at 4–5. Specifically, AT&T explained that it could not collect arguably relevant data from the local computer previously used by Plaintiff because her computer had been decommissioned well before the filing of this lawsuit and was not available.[6] AT&T further explained that network access logon data of the type Plaintiff sought is not captured or stored in the normal course of business; rather, capturing such data would require the development and implementation of a custom computer script that, if successful, would only record network logons prospectively. *See, e.g.*, Dkt. 134; Dkt. 145-1, at 4–5.

Magistrate Judge Horan granted AT&T's motion to compel, and partially granted Plaintiff's motion to the limited extent of allowing Plaintiff to take a corporate representative deposition on the existence of the requested data (but not compelling the production of any additional data or even finding that such data exists). *See* Dkts. 167, 168. The deposition occurred, and AT&T's corporate representative addressed Plaintiff's questions regarding network access logon data and local computer logon data. No further relief was sought or obtained.

Discussion at trial of the parties' cross-motions to compel should be excluded as irrelevant, as these disputes have long since been resolved by Magistrate Judge Horan and have no continuing

---

[6] Local computers were removed from the Dallas call center shortly after it transitioned to the HVD computer system in August 2017—well before Plaintiff filed this lawsuit. Dkt. 140, at 3 n.1.

Defendant's Memorandum of Law in Support of its Omnibus Motions in Limine – Page 18

relevance or applicability to Plaintiff's claims at trial.  *See* Fed. R. Evid. 401; *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-KS, 2017 WL 273669, at *9 (N.D. Tex. Jan. 20, 2017) ("Discovery disputes are not relevant to any issue to be decided by the jury, and any relevance they may have for impeachment purposes are substantially outweighed by the risk of unfair prejudice."); *Stubblefield v. Suzuki Motor Corp.*, No. 3:15-CV-18-HTW-LRA, 2018 WL 4610895, at *5 (S.D. Miss. Sept. 25, 2018) (granting defendant's motion in limine and stating that the court "cannot fathom how discovery disputes between the parties, in this litigation, would be germane to the plaintiffs' case-in-chief").

Likewise, any mention of the nonexistent data sought in Plaintiff's discovery motion also should be excluded.  AT&T has explained both in its briefing and through its corporate 30(b)(6) representative that the type of "network access logon data" or "local computer log data" Plaintiff's counsel sought does not exist for Plaintiff.  *See* Dkt. 140; Dkt. 145-1.  Suggestions otherwise at trial would be not only irrelevant to Plaintiff's overtime claims, but substantially likely to confuse and mislead the jury, or to prejudice AT&T by suggesting—contrary to Magistrate Judge Horan's disposition—that some additional data remains to be produced.  *See* Fed. R. Evid. 403; *Baxter v. Anderson*, No. CV 16-142-JWD-RLB, 2018 WL 259918, at *6 (M.D. La. Jan. 2, 2018) (excluding as irrelevant and prejudicial mention of the scope of discovery between the parties or any discovery disputes).  Moreover, in light of the many different types of data that AT&T has produced in this case, it can only confuse the jury to refer to a yet another type of data that does not exist and will not actually be shown at trial.  Even if, contrary to AT&T's motions in limine, Plaintiff were permitted to make arguments regarding HVD or other data, Plaintiff should be precluded from referencing, introducing evidence regarding, or questioning any witness about the network access logon/logoff data and the Windows login data that Plaintiff often has raised but that does not exist.

Finally, any allegation, testimony, or insinuation that AT&T spoliated or improperly tampered with adherence reports or other evidence, or manufactured fake emails for use in this case, should be

excluded.  *See, e.g.*, Plaintiff's Proposed Jury Charge, Dkt. 230, at 27 (requesting an instruction that Defendant "destroyed" and "did not preserve" "electronic data showing Plaintiff's actual hours of work").  As AT&T has previously explained, due to the way that adherence report data is stored, the reports only reflect actual activities based on data from the CTI system up to 18 months prior to when any report is generated.  The actual underlying data, however, showing both actual and scheduled activities, is archived in another system and was both preserved and produced for Plaintiff as a Microsoft Access database.  That the data Plaintiff sought in discovery is preserved in the normal course of business in a different form than she would have liked does not equate to spoliation or discovery misconduct.  If Plaintiff had any legitimate reason to question this explanation, she had ample opportunity to do so in the course of her discovery motion and subsequent deposition on other data-related issues.  Moreover, it makes no sense to request an adverse inference regarding the content of data when the substance of that data is known and available to the parties.

Accordingly, Plaintiff should be directed under Federal Rules of Evidence 401 and 403 to refrain from improperly alluding to the parties' discovery disputes, referencing data that does not exist, or implying that AT&T has improperly "destroyed" electronic data.

## VII.   MOTION IN LIMINE NO. 7:  The Court Should Exclude Any Argument about or Reference to a Time "Rounding" Rule

The Court should preclude any argument or evidence by Plaintiff, her counsel, or witnesses relating to AT&T's time-processing rule by which increments of time are rounded because (1) Plaintiff has explicitly stated that she is not aware of any particular instances that her time was rounded down to her detriment, *see* Dkt. 198, at 24 (Defs. MSJ App'x 19), and (2) this Court has correctly identified that the issue for trial is "whether AT&T was on notice that Mosley-Lovings was working overtime." *See* Dkt. 220, at 10.

United States Department of Labor regulations generally allow employers to round time, including "to the nearest . . . quarter of an hour." 29 C.F.R. § 785.48(b).  AT&T's official policy does

Defendant's Memorandum of Law in Support of its Omnibus Motions in Limine – Page 20

precisely this, rounding down additional reported time under eight minutes (if not otherwise traded out under the "trade time" practice), and rounding up to a quarter hour any additional reported time of eight minutes or more. First Hixson Dec. ¶ 11 (Decert. App'x 4–5). In practice, even time under eight minutes is often rounded up to 15 minutes. Additional time of a quarter hour or more is also automatically rounded up to a half hour. *Id.* Accordingly, this policy is facially neutral for time under 15 minutes, and systematically favors employees for time over 15 minutes. Because the rounding rule is facially equitable, it would violate the FLSA only if it were "used in such a manner that it" systematically results, "over a period of time, in failure to compensate the employees properly for all the time they have actually worked." § 785.48(b). There is no evidence of that here.

Because Plaintiff conceded she has not suffered any injury from AT&T's lawful rounding policy, the policy is irrelevant to her claims at issue and should be excluded. Fed. R. Evid. 401; Fed. R. Evid. 402. Moreover, testimony by any *other* former opt-in claimant or witness regarding their beliefs about, or allegations related to, rounding are even further afield as these individuals' subjective beliefs and allegations are irrelevant to whether Plaintiff can prove she was not paid for overtime in excess of 40 hours in a week—time that she admits she never reported and, as a result, was never subject to AT&T's rounding policy or practice.[7] Any opinions on AT&T's rounding policy or speculations about its effects—particularly given Plaintiff's agreement that she was not negatively affected by this policy—are substantially likely to complicate the trial and confuse or mislead the jury, distracting them from the actual issue in this case. *See* Fed. R. Evid. 403. Accordingly, this Court should exclude any arguments about or reference to rounding of time.

---

[7] In any event, none of the deposed former opt-in plaintiffs testified that they were aware of any instances when AT&T rounded their time down. *See* Wright 113:5–114:8 (Decert. App'x 4642–43); Chargois 227:7–13 (Decert. App'x 4587); Brown 215:13–24 (Decert. App'x 4561); Sims 228:17–23 (Decert. App'x 4620); Mazzawi 135:7–22 (Decert. App'x 4594); Soptic 88:23–89:11 (Decert. App'x 4629); Chigbogu 104:5–14 (Decert. App'x 4658).

## VIII.   MOTION IN LIMINE NO. 8:   The Court Should Exclude Evidence about or Reference to Any "Missing Witnesses" No Longer Subject to AT&T's Control.

AT&T requests that this Court exclude any testimony, evidence, or speculation as to why any individual not within AT&T's control does not testify at trial.  Under the law of this Circuit, a party is not entitled to an adverse inference from a witness's absence unless that party demonstrates both that the individual (1) is peculiarly within the opposing party's power to produce, and (2) would provide testimony that will elucidate facts at issue.  *United States v. Rios*, 636 F.3d 168, 171 (5th Cir. 2011).  This prohibition extends to a *party*'s own mention of or speculation about any particular witness as "missing."  *See Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11468934, at *5 (E.D. Tex. Oct. 5, 2010) (granting motion in limine to exclude any mention of an absent witness without an affirmative showing of both requirements); *Nuutinen v. CBS Corp.*, No. 97-C-678, 2015 WL 3645899, at *12 (E.D. Wis. June 9, 2015) (agreeing that neither party may argue to the jury that an adverse inference should be drawn from the other party's failure to call a witness unless the party makes both required showings).  This is because such statements are likely to confuse or mislead the jury by suggesting a negative inference from a witness's absence, where such inference is unwarranted. *Id.*; Fed. R. Evid. 403.

Although Plaintiff does not explain the basis for the instruction, Plaintiff has requested a jury instruction that could apply in a missing witness situation.  *See* Plaintiff's Proposed Jury Charge, Dkt. 230, at 12.  Certain employees from the Dallas and Fort Worth call centers, however, are no longer within AT&T's control.  The AT&T call center in Fort Worth closed in September 2016, and the call center in Dallas closed in March 2018.  Many former employees from these call centers are no longer employed by AT&T, and thus are no longer peculiarly within AT&T's power to produce at trial.  *See Rios*, 636 F.3d at 171.  The likely prejudice and confusion that would result from allowing Plaintiff to comment on the absence of former employees—who are *not* solely within AT&T's power—heavily outweigh any probative value of such information (which is zero).  *See* Fed. R. Evid. 403.  Accordingly,

Plaintiff should be precluded from offering testimony, evidence or argument regarding the failure to call or absence at trial of any witness without affirmatively demonstrating both AT&T's exclusive control and the importance of the witnesses' testimony.

## IX.   MOTION IN LIMINE NO. 9:  The Court Should Exclude Evidence about and Reference to the Corporate Status or Financial Condition of AT&T, Its Parent Company, or Affiliates.

This Court should exclude any mention of the corporate or financial status of AT&T, its parent company, or affiliates.  As numerous courts have held, statements about corporate status or wealth meant to evoke sympathy in jurors are generally irrelevant and unfairly prejudicial.  *See, e.g., Moyer v. Siemens Vai Servs., LLC*, No. CV 11-3185, 2013 WL 12231277, at *3 (E.D. La. June 28, 2013) (excluding evidence of defendant's size or wealth); *Riley v. Ford Motor Co.*, No. 2:09-CV-148-KS-MTP, 2011 WL 3273592, at *1 (S.D. Miss. July 29, 2011) (excluding "any evidence, reference, or argument regarding the[] financial condition or the relative wealth/poverty of the parties" as "irrelevant to the issues of this case").  Plaintiff may attempt to introduce evidence of AT&T's corporate or financial status to imply that it "could have"  or "should have" acted differently.  But these assertions are not only irrelevant to the claim to be tried, they carry a strong likelihood of distracting or confusing the jury by suggesting that AT&T needed to use the "best"—rather than simply a lawful—method of employee timekeeping.

Relatedly, any reference to AT&T's executive compensation or bonus structure is irrelevant and has absolutely no likelihood to make Plaintiff's claims more or less true.  *See* Fed. R. Evid. 401. Such evidence should be excluded as it has no legitimate purpose in this case and would only insert improper and prejudicial considerations into the jury deliberations.  *See Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2016 WL 10706086, at *3 (N.D. Ind. Oct. 28, 2016) ("Evidence of the employees' compensation . . . appears more aimed at appealing to the jury's sympathies given the wealth and compensation of the defendant and its employees.").

## X.   MOTION IN LIMINE NO. 10:   The Court Should Exclude Evidence about and Reference to the Size or Characteristics of the Law Firm Representing AT&T.

Any reference to the size, resources, fees, or other characteristics of the law firm that AT&T has hired to represent it in this matter should be excluded.   The fact that AT&T's counsel are members of any particular law firm is irrelevant to any issue before the jury and has no tendency to make any fact of consequence to Plaintiff's claim "more or less probable than it would be without the evidence." Fed. R. Evid. 401.   The only purpose in highlighting such issues would be an attempt to inject prejudice into the case under the hope that jurors will draw negative inferences about AT&T, for example, by suggesting that AT&T is able to afford a "big firm" or greatly concerned about its liability.   *See* Fed. R. Evid. 403; *Whitehead v. Food Max Inc.*, 163 F.3d 265, 276–78 (5th Cir. 1998) ("Arguments which invite a jury to act on behalf of a litigant become improper 'conscience of community' arguments when the parties' relative popular appeal, identities or geographical locations are invoked to prejudice the viewpoint of the jurors.") (internal citations and quotation marks omitted).   Accordingly, the Court should exclude the presentation of such information to the jury under Federal Rules of Evidence 401, 402, and 403.

## XI.   MOTION IN LIMINE NO. 11:   The Court Should Exclude Statements before the Jury Accusing AT&T, Its Counsel, or Its Witnesses of Alleged "Lies" or "Misrepresentations."

AT&T requests that the Court instruct Plaintiff's counsel to refrain from the improper, irrelevant, and prejudicial *ad hominem* attacks that have pervaded Plaintiff's briefing and other filings throughout this lawsuit.   *See, e.g.*, Dkt. 201, at 5 ("AT&T and their lawyers have demonstrated that they will say anything if they think it will give them a strategic advantage in Court, even if the statement is demonstrably false . . . ."); Dkt. 201, at 3 (similar).   In addition to unfounded rhetoric of this sort aimed at AT&T and its counsel, Plaintiff's counsel has insinuated, without evidence, that AT&T's corporate representative has "lied" in her declarations or deposition and suggested without any basis that AT&T has manufactured and produced fake emails.   While Plaintiff is of course free to attempt

to impeach the testimony of any witness, these inflammatory attacks are not only irrelevant to the merits of Plaintiff's claim, but are distracting, confusing, and highly prejudicial. *See* Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 403; *see also In re First City Bancorporation of Texas, Inc.*, 270 B.R. 807, 813 (N.D. Tex. 2001), *aff'd sub nom. In re First City Bancorp. of Texas Inc.*, 282 F.3d 864 (5th Cir. 2002) (holding that "*ad hominem*" attacks "have no place in legal practice in this district"); *Vital v. Varco*, No. CV H-12-1357, 2015 WL 7736637, at *6 (S.D. Tex. Nov. 30, 2015), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.*, 685 F. App'x 355 (5th Cir. 2017) (referencing district court's grant of motion in limine to exclude any "*ad hominem* statement that is untethered to any evidence").

## XII.   MOTION IN LIMINE NO. 12:   The Court Should Exclude Arguments and Allegations about FLSA Violations Not Pleaded in Plaintiff's Complaint.

Any mention or reference to alleged FLSA violations by AT&T that are not pleaded in Plaintiff's Complaint should also be excluded as irrelevant and potentially confusing to the jury. *See* Fed. R. Evid. 401; Fed. R. Evid. 403. Specifically, Plaintiff should be prohibited from introducing or discussing "recordkeeping" violations, *see* 29 U.S.C. § 211(c), as she did not plead a recordkeeping claim in her Amended Complaint. Dkt. 21. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995) (upholding trial court's decision to exclude evidence unrelated to the claims actually pleaded in the complaint). Plaintiff's jury instructions now suggest that Plaintiff may intend to argue a violation of the recordkeeping provision, even though that is not the issue in this case. This claim is not only irrelevant, it is also confusing and a waste of time under Rule 403, as the FLSA does not provide a private right of action for employees to sue under Section 211(c). *See, e.g., Lobo v. Sprint Safety, Inc.*, No. 4:19-CV-3934, 2020 WL 1659888, at *2 (S.D. Tex. Mar. 30, 2020) (citing *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002)). Accordingly, it should be excluded.

## CONCLUSION

For the foregoing reasons, AT&T respectfully requests that this Court enter an Order precluding introduction of evidence, testimony, or discussion of the items discussed herein.

Defendant's Memorandum of Law in Support of its Omnibus Motions in Limine – Page 25

Dated:  August 6, 2020

Respectfully submitted,

*/s/ Karl G. Nelson*
Karl G. Nelson
   TX Bar No. 14900425
Andrew P. LeGrand
   TX Bar No. 24070132
Ashley E. Johnson
   TX Bar No. 24067689
Collin D. Ray
   TX Bar. No. 24093013
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel.: (214) 698-3100
Fax: (214) 571-2900
KNelson@gibsondunn.com
AJohnson@gibsondunn.com
ALeGrand@gibsondunn.com
CDRay@gibsondunn.com

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

Defendant's counsel Karl Nelson, Andrew LeGrand, and Collin D. Ray conferred with Plaintiff's counsel Jeffrey Brown and Glen Dunn by telephone on March 6, 2020 to discuss the relief requested herein.   Plaintiff's counsel stated that Plaintiff opposes Defendant's motion, but that Plaintiff remains open to conferring about possible agreement on Motion in Limine Nos. 9, 10, and 12.


*/s/ Collin D. Ray*
Collin D. Ray
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's ECF system as of the date file-stamped thereon.

*/s/ Karl G. Nelson*
Karl G. Nelson
Counsel for Defendants